# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS FLORES,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:25-cv-01001-SAB<br><br>ORDER OF REASSIGNMENT TO A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING AFFIRMING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 15, 19) |

Plaintiff Jesus Flores ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits pursuant to the Social Security Act. In the Court's scheduling order, the parties were advised to complete within 90 days either consent or declination forms regarding whether to proceed in this action with a Magistrate Judge presiding. (ECF No. 5.) One or more parties failed to file a consent or declination form within that deadline, which the Court construes as withholding consent. Therefore, the Court will reassign this matter to a district judge with findings and recommendations, pursuant to Local Rule 302(c)(15).

Plaintiff requests the final decision of Commissioner be reversed and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ")

erred in the analysis of Plaintiff's subjective complaints, including the use of certain activities of daily living.

For the reasons explained herein, the Court will recommend affirming the decision of the Commissioner.

## I.

## BACKGROUND

### A. Agency Procedural History

On May 3, 2022, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, alleging disability beginning July 31, 2007, for both applications. (ECF No. 13, Administrative Record ("AR"), 20.) Plaintiff's application was initially denied on October 19, 2022, and denied upon reconsideration on March 10, 2023. (Id.) Plaintiff requested a hearing before an ALJ. On April 14, 2023, Plaintiff, represented by counsel, appeared via a telephonic hearing in front of an ALJ. (Id.) Plaintiff and vocation expert ("VE") Paul Steve Ramirez testified. (Id.) On July 23, 2024, the ALJ issued a decision concluding that Plaintiff was not disabled. (AR 38.) On June 4, 2025, the Appeals Council denied Plaintiff's request for review. (AR 3-7.)

### B. The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2017, the alleged disability onset date. (AR. 23.) The ALJ found that Plaintiff had the following severe impairments: bipolar disorder with psychotic features, major depressive disorder, and unspecified anxiety disorder. (Id.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 26.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except Plaintiff could frequently climb, balance, stoop, kneel, crouch, or crawl, but occasionally climb ladders, ropes, or scaffolds. Plaintiff was able to understand, remember, and carry out simple work instructions. Plaintiff could have occasional interaction with coworkers, but no teamwork, and he

should have no direct interaction with the public, except superficial or incidental as needed to complete independent job duties. Plaintiff could have occasional changes to a routine work environment. (AR 28.)

The ALJ found that Plaintiff had no past relevant work and had a limited education. (AR 36.) Then, the ALJ found that Plaintiff was 46 years old on the alleged disability onset date and subsequently changed age categories to closely approaching advanced age. (Id.) The ALJ discussed that transferability of job skills was not an issue because Plaintiff did not have past relevant work. (Id.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 37.) Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 1, 2017, through the date of the decision, July 23, 2024. (AR 38.)

Plaintiff sought timely review of the Commissioner's final decision in the federal courts. (ECF No. 1.) Thereafter, the parties filed their briefs on the matter. (ECF Nos. 15, 19.)

## II.

## LEGAL STANDARD

### A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled. 20 C.F.R. § 404.1520;[1] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

[1] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[2] "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d

[2] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in two ways. First, Plaintiff argues that the ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints. (ECF No. 15-1, pp. 3-6.) Second, and relatedly, Plaintiff contends that the ALJ erred in her analysis of Plaintiff's activities of daily living ("ADLs") when analyzing Plaintiff's subjective complaints. (Id. at pp. 7-8.) The Commissioner opposes, arguing that substantial evidence supports the ALJ's decision. (ECF No. 15.) The Court finds that Plaintiff's arguments collapse into each other and agrees with the Commissioner.

### A. Analysis of Plaintiff's Subjective Complaints

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014), quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). As relevant here, where the ALJ "determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert, 980 F.3d at 1277, quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "Ultimately, the 'clear

and convincing' standard requires an ALJ to show his work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that testimony." Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). Boilerplate statements and general summaries of the evidence, without more, are not enough. Id. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Id. at 1277.

While "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise, . . . [w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498 (emphasis in original). Indeed, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). "The standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt, 53 F4th at 499.

Additionally, an ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid," and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). For example, "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012), superseded on other grounds by 20 C.F.R. § 404.1502(a). Further, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent

that they contradict claims of a totally debilitating impairment." Id., citing Turner v. Commissioner of Social Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); see Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

In his brief, Plaintiff recognizes that the ALJ summarized his subjective complaints and even provided reasoning; however, Plaintiff contends generally that the ALJ did not provide "clear and convincing and relies almost exclusively on lack of objective medical evidence." (ECF No. 15-1, p. 6.) In addition to this general argument, Plaintiff asserts that the ALJ's opinion contradicts itself in from Step 3 compared to the RFC determination as to whether Plaintiff had mild or moderate limitations in realm of understanding and remembering. (Id.)

In the decision, the ALJ summarized Plaintiff's testimony as follows:

> The claimant alleged disability due to schizophrenia, bipolar disorder, severe depression, and other mental impairments and symptoms (Exhibits 1E; 13E). His reported medications included Abilify, trazodone, and prazosin (Exhibit 12E). He testified that he talks in his sleep a lot and has nightmares. He also testified that he has prior issues with drug addiction, and that he last used alcohol and methamphetamine approximately seven months ago. The claimant reported that he has been able to stay away from illicit substances since undergoing rehab. He stated that his mental health periodically improved with treatment, as he underwent medication adjustments and therapy.
>
> The claimant completed a Function Report, alleging limitations with talking, hearing, seeing, memory, completing tasks, concentration, understanding, following instructions, and getting along with others (Exhibit 4E). He reported auditory and visual hallucinations, slurred speech, memory loss, and inability to focus. He also reported nightmares, extreme anxiety, and paranoia. He stated that he is able to prepare sandwiches and frozen dinners for himself. The claimant denied engaging in social activities, stating that he is overwhelmed and stays to himself. He reported that he [d]oes not always get along with his roommates. He testified that he has recently taken classes at the Women's Center, which he reported finding soothing. He stated that the Women's Center teaches gardening and exercises for stress and depression.

(AR 29.)

Though the ALJ observed Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 32.)

The ALJ then gave an in-depth summary of the medical evidence, including Plaintiff's psychiatric records, records from his sober living program, mental health assessments, a psychological consultative examination, behavioral health records, and mental status exams. (AR 29-32.)

The ALJ then discussed her reasons for discounting certain portions or aspects of Plaintiff's subjective complaints:

> The claimant's alleged symptoms of hallucinations, nightmares, and paranoia are somewhat consistent with the medical evidence, as he has reported these symptoms during his behavioral health follow-up visits (Exhibits 2F/7-10, 39; 4F/20; 7F/8; 12F/54-58). There was a reported increase in these symptoms following a relapse and admission into Pine Recovery around September 2023 (Exhibit 14F/44-50). However, he reported that his intermittent hallucinations were not distressing to him and were well-managed with medication following 30 days of sobriety (Exhibit 14F/52-53). He also reported symptoms of stress, anxiety, difficulty sleeping, feeling overwhelmed, hallucinations, and depression through February 2024 (Exhibit 14F/62, 84). The medical evidence otherwise showed the claimant reporting improvement in his symptoms, including mild, non-command auditory hallucinations with medication management and adjustments (Exhibits 1F/50-51; 2F/13-14; 7F/8-12; 12F/46-58, 66; 14F/31). It appears that, while the claimant has had some periods of increased symptoms, especially in response to stressors or substance use, he has otherwise been maintained with medication. This evidence does not support chronic, debilitating mental symptoms.
>
> Additionally, the mental status exams do not support the claimant's alleged level of mental functional limitations (Exhibit 4E). For example, while he reported difficulty following written and spoken instructions, his mental status exams have generally found intact or normal memory and intellect (Exhibits 1F/45-46; 2F/10; 4F/15, 20; 14F/45). He had an MMSE score of 27/30 in February 2019, which is not indicative of notable cognitive impairment. The claimant had some deficits with delayed recall during his psychological consultative examination, but he was also able to correctly subtract $1.50 from $5 (Exhibit 5F). His treating notes and exams do not support more than mild limitations in his ability to understand, remember, or apply information, which is consistent with his report of only mild limitations from cognitive issues during his psychological consultative examination. Similarly, the claimant alleged a short attention span and not finishing what he starts (Exhibit 4E). His baseline hallucinations, along with exams showing some limited concentration and distraction, including his limited ability to perform digit span tasks during his consultative examination, is consistent with some limitation in his ability to concentrate and persist through tasks (Exhibits 2F/13-14, 25-26; 5F; 7F/8; 12F/46, 58). However, he also reported watching four hours of television daily, which would reasonably require some

ability to concentrate and persist (Exhibit 6F). Moreover, his other mental status exams found linear and goal-directed thought processes (Exhibits 1F/45-46, 50-51; 2F/13-14, 39; 4F/15). He was able to spell "world" forward and backward, and he performed serial threes adequately, which also supports some maintained abilities in this area. The undersigned finds that the medical evidence supports limiting the complexity of mental tasks performed by the claimant but does not find that the evidence supports a complete inability for simple work instructions.

The claimant alleged extreme anxiety and paranoia, and he reported not liking crowds (Exhibit 4E). However, during the psychological consultative examination, he reported having no difficulties with supervisors and coworkers when he worked, but he reported paranoia and psychotic symptoms affecting his interactions with others (Exhibit 5F). He also presented as cooperative with a slightly guarded manner, and intermittent but appropriate eye contact during that exam, and he interacted appropriately with the examiner. This exam findings, observations, and the claimant's self-reports are not consistent with significant difficulties interacting appropriately with others, especially when he otherwise presented as calm, cooperative, and engaged behavior with good eye contact (Exhibits 1F/50-51; 2F/39; 7F/8, 12; 12F/46). There were some reports for residual paranoia, but he continued to interact appropriately with his examiners and providers (Exhibits 7F/12; 12F/54-58). The claimant's paranoia and auditory hallucinations could cause some difficulty interacting with others in the workplace, but the longitudinal evidence, including observations and exam findings, do not support finding that he is incapable of some interactions commensurate with simple instruction and independent job duties. The claimant's negative responses to increased stressors supports limiting him from more than occasional changes in a routine work environment (Exhibits 7F/8; 12F/50-51). However, his generally good insight, judgment, and impulse control, as well as his independence with basic daily living activities support finding that he could maintain attendance throughout a workday and workweek.

Accordingly, the undersigned finds that the claimant is able to understand, remember, and carry out simple work instructions. He could have occasional interaction with coworkers, but no teamwork, and he should have no direct interaction with the public, except superficial or incidental as needed to complete independent job duties. He could have occasional changes to a routine work environment. As discussed above, these limitations accommodate his periods of increased symptoms, including non-command, mild hallucinations, feelings of being overwhelmed, residual paranoia, and impaired attention. These limitations are otherwise consistent with his documented intact or normal memory, intellect, sensorium, insight, judgment, impulse control, thought processes, and behavior.

The undersigned finds that the claimant has non-severe physical impairments, as discussed at Finding 2 of this decision. However,

> the undersigned also finds that, based on the combination of those non-severe physical impairments, including left knee osteoarthritis, obesity, diabetes, and hammertoes and plantar fasciitis, he is able to perform medium work except he could frequently climb, balance, stoop, kneel, crouch, or crawl, but occasionally climb ladders, ropes, or scaffolds. These limitations accommodate his pain complaints relating to his mobility and exertional activities.

(AR 33-34.)

From the outset, the Court is not persuaded by Plaintiff's general attack on the ALJ's analysis of Plaintiff's subjective complaints. As is clear, the ALJ did not rely "almost exclusively on lack of objective medical evidence" in support of her determination. Rather, the ALJ cited to records that contradicted Plaintiff's testimony (including reports by Plaintiff himself), records that demonstrated improvement, and ADLs (analyzed more thoroughly below). The Court finds that the ALJ's rationale is clear enough that it has the power to convince. Smartt, 53 F4th at 499. Thus, to the extent Plaintiff has brought a general argument regarding the ALJ's analysis of Plaintiff's subjective complaints, the Court finds that the ALJ did not err.[3]

The Court next takes Plaintiff's specific argument. Plaintiff argues that in the analysis of his subjective complaints the ALJ erred by finding in the RFC determination that Plaintiff had mild limitations as to Plaintiff's ability to understand, remember, or apply information. (AR 33.) This is so, Plaintiff contends, because at Step 3, the ALJ found that Plaintiff had a moderate limitation as to understanding, remembering or applying information. (AR 26.) However, as the Commissioner has noted, this appears to have been a scrivener's error by the ALJ.

The Step 3 paragraph in full regarding understanding, remembering or applying information provides:

> In understanding, remembering or applying information, the claimant has a ***moderate*** limitation. The claimant reported that he does not do well following written or spoken instructions (Exhibit 4E). He also reported that he is able to count change, but not pay bills, handle a savings account, or use a checkbook or money order. The claimant stated that he needs reminders to take medicine. He had reported subjective deficits in his memory on February 20, 2019, but his mental status exam found grossly normal memory and intellect (Exhibit 1F/45-46). He also had an

[3] The Court reviews only those issues raised by the party challenging the decision. See Lewis, 236 F.3d at 517 n.13. As such, the Court will not independently conduct a line-by-line analysis of the ALJ's opinion; it is the duty of counsel to make the arguments and direct the Court to those portions of the ALJ's opinion that are purportedly error.

> MMSE score of 27/30. His other mental status exams found unimpaired or normal memory (Exhibits 2F/10; 4F/15, 20; 14F/45). The claimant had reported only mild limitations from psychiatric and/or cognitive issues during his psychological consultative examination (Exhibit 5F). His mental status exam revealed a limited memory with recall of only one of three words after a brief delay, but he was able to correctly calculate change from a math problem. He had intact intelligence. The undersigned finds a ***mild*** limitation here. He had limited memory during his psychological consultative examination, but he was able to perform other tasks requiring calculations, and his other mental status exams did not document any abnormalities in memory.

(AR 26) (emphasis added).

The Court finds that in context it is clear that the ALJ analyzed and found that Plaintiff had a mild limitation in understanding, remembering, or applying information. Because this is congruent with the ALJ's later RFC determination, the Court finds that the ALJ did not err in this regard.

Lastly, Plaintiff argues that the ALJ improperly used Plaintiff's ADLs in the analysis of Plaintiff's subjective complaints. Specifically, Plaintiff takes issue with two uses of ADLs by the ALJ. (ECF No. 15-1, p. 7.) First, Plaintiff argues that the ALJ improperly used Plaintiff's report that he watches four hours of television daily. Second, Plaintiff argues that the ALJ improperly used Plaintiff's "basic daily living activities [to] support finding that he could maintain attendance throughout a workday and workweek." (Id., quoting AR 33.) Though Plaintiff's formulation of the Ninth Circuit's precedent regarding ADLs is correct, his arguments are not persuasive.

Beginning with television, the Court finds that context is important. Regarding Plaintiff's testimony that he had a short attention span and not finishing what he starts, the ALJ analyzed that Plaintiff alleged a short attention span, which was supported to a degree by Plaintiff's hallucinations and "exams showing some limited concentration and distraction, including his limited ability to perform digit span tasks during his consultative examination . . . ." (AR 33.) Yet, the ALJ observed that it was Plaintiff's own testimony that he watched television for four hours daily, which "would reasonably require some ability to concentrate and persist." (Id.) The ALJ then cited Plaintiff's other mental status exams that "found linear and goal-directed thought processes." (Id., citing Exhibits 1F/45-46, 50-51; 2F/13-14, 39; 4F/15.) The ALJ also observed

that Plaintiff "was able to spell 'world' forward and backward, and he performed serial threes adequately, which also supports some maintained abilities in this area." (Id.) The ALJ relied on this and other evidence to find "that the medical evidence supports limiting the complexity of mental tasks performed by the claimant but does not . . . support[] a complete inability for simple work instructions." (Id.)

The Court finds that the ALJ properly compared Plaintiff's allegation that he had a short attention span and does not finish what his starts with Plaintiff's own testimony that he watches television for four hours daily. Critically, the ALJ did not discount Plaintiff's entire allegation of a short attention span or not finishing what he starts but found that the *degree* of the alleged complaint was not entirely consistent with Plaintiff's other testimony. Moreover, the ALJ's notation that Plaintiff's daily television habit was only one aspect of how the ALJ came to a nuanced determination of this subjective complaint.

Plaintiff's suggestion that the ALJ was using Plaintiff's television testimony as an attempt to find that this supported that Plaintiff could meet a threshold for a transferable work skill is misplaced. As evidenced by the opinion, the ALJ used Plaintiff's television testimony as somewhat undercutting Plaintiff's other testimony of a short attention span and an inability to finish what he starts. Thus, the ALJ properly used this ADL. See Orn, 495 F.3d at 639.

Turning to attendance, again context matters. To begin with, in discussing Plaintiff's complaints regarding that he cannot handle stress or changes well, the ALJ analyzed the psychological consultative examination by J. Fakhoury, Psy.D., dated August 26, 2022. (AR 30.) The ALJ noted that Dr. Fakhoury found that "[Plaintiff] was independent for basic activities of daily living." (AR 30, citing AR 596.)

Then, in discussing Plaintiff's subjective complaints regarding extreme anxiety and paranoia, as well as not liking crowds, the ALJ noted that "during the psychological consultative exam," Plaintiff reported no difficulties with supervisors and coworkers when he worked, but Plaintiff did report paranoia and psychotic symptoms affecting his interactions with others. (AR 33.) And while Plaintiff presented with a slightly guarded manner, he also presented with "intermittent but appropriate eye contact during that exam, and he interacted appropriately with the

examiner." (Id.) The ALJ found "[t]his exam findings, observations, and the claimant's self-reports are not consistent with significant difficulties interacting appropriately with others, especially when he otherwise presented as calm, cooperative, and engaged behavior with good eye contact." (Id., citing Exhibits 1F/50-51; 2F/39; 7F/8, 12; 12F/46.) That said, the ALJ acknowledged that "[t]here were some reports for residual paranoia, but [Plaintiff] continued to interact appropriately with his examiners and providers." (Id., citing Exhibits 7F/12; 12F/54-58.) The ALJ found that while "[Plaintiff's] paranoia and auditory hallucinations could cause some difficulty interacting with others in the workplace," the ALJ also found that "the longitudinal evidence, including observations and exam findings, do not support finding that he is incapable of some interactions commensurate with simple instruction and independent job duties." (Id.) With that, the ALJ discussed that "[Plaintiff's] negative responses to increased stressors supports limiting him from more than occasional changes in a routine work environment." (Id., citing Exhibits 7F/8; 12F/50-51.) Finally, the ALJ found that "[Plaintiff's] generally good insight, judgment, and impulse control, as well as his independence with basic daily living activities support finding that he could maintain attendance throughout a workday and workweek." (Id.)

The Court notes that the ALJ's discussion of the "psychological consultative exam" in the realm of anxiety and paranoia was the same exam discussed earlier by J. Fakhoury, Psy.D., dated August 26, 2022. In that exam, Dr. Fakhoury found that "[w]ith maintaining regular attendance in the work place, the claimant is moderately limited for a 40-hour work week and consistent attendance due to symptoms of depression and paranoia." (AR 597.) Thus, it appears that the ALJ's discussion in this section regarding attendance was aimed at discussing why Dr. Fakhoury's finding regarding attendance was not credible. Thus, the Court finds that in context the ALJ was discrediting a portion of Dr. Fakhoury's opinion as internally inconsistent with her other finding that Plaintiff was independent for basic ADLs. This is further supported by the ALJ's discussion regarding the persuasiveness of Dr. Fakhoury. (AR 35) ("The opinion that the claimant would miss work throughout the week due to symptoms, lack of motivation, and interpersonal problems is not persuasive.").

Therefore, the Court finds that the ALJ was not using Plaintiff's ADLs to demonstrate that

he meets the threshold for transferable work skills but that Dr. Fakhoury's finding that Plaintiff was independent with basic ADLs (along with Plaintiff generally good insight, judgment, and impulse control) did not support that Plaintiff's attendance would be affected by his paranoia or anxiety.

Plaintiff's discussion of Ferguson v. O'Malley, while informative, does not move the needle. 95 F.4th 1194 (9th Cir. 2024). In Ferguson, the ALJ stated that "[a]ctivities the claimant has performed during the period at issue further supports finding that in spite of his symptoms he remained capable of some degree of sedentary, simple work." Id. at 1203. For example, the ALJ "noted that [the plaintiff's] daily activities include 'watching television and playing video games,' 'help[ing] care for his mother's wild cats,' 'prepar[ing] simple meals,' 'going out to his shop to work on projects' (such as a model house), and 'walk[ing] every now and then.'" Id. (brackets in original). "The ALJ also noted that some reports indicated that [the plaintiff] 'attended to basic self-care and remained capable of driving a vehicle.'" Id. Yet, the Ninth Circuit determined that the ALJ did not explain how "[the plaintiff's] testimony about those daily activities is inconsistent with his testimony about the severity and frequency of his headaches." Id. Moreover, the Ninth Circuit was unable to observe a reasonable inference that such an inconsistency existed. Id. The Court explained that the plaintiff had "testified that he experiences headaches two or three times a week, and that sometimes, the headache lasts 'a day or two.' Further, [the plaintiff] testified that when he experiences headaches, he does not 'get out of [his] room,' and he does 'nothing.'" Id. The Court observed that the plaintiff "can both do nothing when he has severe headaches and engage in his daily activities when he does not." Id. Thus, the Ferguson Court perceived no inconsistency between the plaintiff's headache testimony and his ADLs. Id.

As should be apparent, the ALJ here did not use ADLs generally to support a finding that Plaintiff could perform work. Rather, the ALJ compared Plaintiff's subjective complaint regarding having a short attention span and not finishing what he starts with Plaintiff's other testimony that he watches four hours of television daily. The ALJ did not even use this ADL as discrediting this subjective complaint completely but discussed how it undercut the alleged severity. Moreover, regarding attendance, the ALJ was responding to Dr. Fakhoury's finding that Plaintiff's would

have a moderate limitation maintaining regular attendance in the workplace because of his depression and paranoia. The ALJ found that Dr. Fakhoury's other finding that Plaintiff was independent for basic ADLs (along with Plaintiff's generally good insight, judgment, and impulse control) supported that Plaintiff could maintain attendance throughout a workday and workweek. Again, this is confirmed by the ALJ's later discussion of the persuasiveness of Dr. Fakhoury's opinion. (AR 30-31.)

Thus, the error that occurred in Ferguson did not happen here. The Court has considered the parties remaining arguments and finds them either unpersuasive or unnecessary to reach in light of the foregoing analysis.

* * *

In sum, the Court finds that the ALJ correctly applied Ninth Circuit precedent in analyzing Plaintiff's subjective complaints. The Court further finds that the ALJ's use of the term "moderate limitation" in understanding, remembering, or applying information was a scrivener's error at Step 3; in context, the ALJ clearly found that Plaintiff had "a mild limitation here."[4] (AR 26.) Finally, the Court finds that the ALJ appropriately considered and analyzed Plaintiff's ADLs as raised herein.

The ALJ did not err.

## IV.

## ORDER AND RECOMMENDATION

It is HEREBY ORDERED that the Clerk of the Court is DIRECTED to randomly reassign this matter to a district judge.

For the reasons stated herein, IT IS HEREBY RECOMMENDED that the decision of the Commissioner of Social Security be AFFIRMED and that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Jesus Flores.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen

[4] As such, the Court finds that any such error was harmless. Leach, 70 F.4th at 1255 ("An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'").

(14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Absent leave of the Court, any objections shall not exceed **fifteen (15) pages** and, absent good cause and leave of the Court, shall be limited to arguments previously presented by the parties or ruled upon by the Court, and shall not cite any new authority which could have been cited at the time of the filing.

The District Judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 21, 2026**

STANLEY A. BOONE
United States Magistrate Judge